CHLOE RAFER,

       Plaintiff,

v.                                No: 8:19-cv-1312-WFJ-JSS

INTERNAL CREDIT SYSTEMS, INC.;
TRIUMPH FIT, INC.;

       Defendants.

_____/

## <u>ORDER</u>

Plaintiff Chloe Rafer accuses Defendants Triumph Fit, Inc. and Internal Credit Systems, Inc. of violating the Fair Debt Collection Practices Act ("FDCPA") and the Florida Consumer Collection Practices Act ("FCCPA") when attempting to collect a debt linked to her gym membership. At issue today are the following Motions for Summary Judgment: Dkts. 74, 75, 76, and 85. The parties filed the following responses: Dkts. 87, 89, 91, 93, and 95. After careful review of the record and applicable case law, the Court issues the following decision.

Plaintiff Rafer signed up for a gym membership in May 2018 at Triumph Fit—a franchise of Anytime Fitness located in Largo, Florida. Dkt. 77, Ex. C. The membership ran for a period of twelve months and was set to expire in May 2019. *Id.* at 1. Ms. Rafer was required to pay $32.09 each month. *Id.* at 1–2.

The membership agreement laid out four scenarios that would have allowed Plaintiff Rafer to cancel her membership during the first twelve months: (1) if the gym went out of business; (2) if the gym facility moved more than five miles away; (3) if Ms. Rafer died; or (4) if Ms. Rafer became disabled and physically incapable of using the gym facilities. *Id.* at 2. Ms. Rafer also had the power to cancel the membership without any penalties three days after signing the agreement. *Id.* However, beyond these limited exceptions, the agreement did not allow Plaintiff to cancel her membership during the initial twelve-month term. *Id.* at 4 ("Unless cancelled [pursuant to the aforementioned exceptions], MEMBER will be responsible for all payments due and owing under this Agreement, even if MEMBER does not use the CLUB's facilities and services.").

The membership was set to automatically renew for an additional twelve months once the first year of the membership ended. *Id.* at 1 ("AUTOMATICALLY RENEWS . . . Yes"); *id.* at 5 ("All term memberships that renew are renewed for 12 months."). However, Ms. Rafer had the option to cancel this renewal by sending a written notice within thirty days to either the club's address in Largo, Florida or the address of the club's designated billing company, ABC Financial Services, Inc. *Id.* at 3, 4, 5. Both addresses were provided in the contract. *Id.* at 1, 3.

In January 2019—only eight months into the first year of her membership—Plaintiff Rafer wished to cancel the membership because she was moving away from the area.[2] Dkt. 44 at 5; Dkt. 86, Ex. A at 14. Plaintiff visited the "Contact Us" page on the national website for Anytime Fitness and submitted a message stating she wished to cancel her membership.[3] Dkt. 86, Ex. A at 16–17. Plaintiff does not remember whether she included her full name in the "Contact Us" message. *Id.* at 20–21 ("[Q:] Did you put any of your own identifying information in [the 'Contact Us' message] even though it apparently wasn't required? [Chloe Rafer]: Well, it said your name, so I — so I believe I just put Chloe. I'm not sure if I put Chloe Rafer."). However, Plaintiff believes she did identify the Largo gym location in her message. *Id.* ("[Chloe Rafer]: I believe I put Chloe in regards to Largo Anytime Fitness membership."). Plaintiff never heard back about her inquiry, and she does not have a copy of the message. *Id.* at 20, 67.

Plaintiff assumed this was sufficient to cancel her membership, and she directed her bank to stop auto-billing her for the monthly membership charges. *Id.* at 26. Her account soon fell into delinquent status. Dkt. 77 at 3. ABC Financial

---

[2] Although Plaintiff believed she had to cancel her membership because she was moving, *see* Dkt. 86, Ex. A at 14–15, the agreement explicitly stated she had the ability to use other Anytime Fitness clubs in other locations, *see* Dkt. 77, Ex. C at 6.

[3] This "Contact Us" message is the "email" to which Plaintiff refers in her Amended Complaint. Dkt. 44 at 5; Dkt. 86, Ex. A at 22.

Services then began contacting Plaintiff about the outstanding balance, which totaled $228.36. *Id.*; Dkt. 86 at 3.

In March 2019, Plaintiff sent her mother into the gym in another attempt to cancel the membership.[4] Dkt. 77 at 3; Dkt. 86 at 4; Dkt. 86, Ex. A at 22. The parties' stories diverge at this point. According to Plaintiff, a gym representative told Plaintiff's mother that nothing could be done and the account would be sent to collections. Dkt. 77 at 3; Dkt. 86, Ex. A at 22. According to Triumph Fit, its representative told Plaintiff's mother that it was the gym's policy to only speak with the account holder and that only the account holder could attempt to cancel a contract. Dkt. 86 at 4; Dkt. 86, Ex. C at 64. However, Triumph Fit avers its representative also said the gym would make an exception for Plaintiff and allow her to cancel the membership early if she provided proof she moved to another state. Dkt. 86 at 4–5; Dkt. 86, Ex. C at 64. Neither Plaintiff nor her mother ever submitted such documentation.

Plaintiff herself never visited the gym to cancel the account. Dkt. 86 at 4; Dkt. 86, Ex. A at 23. She says she was unable to do so because she was experiencing anxiety about the cancellation. Dkt. 86, Ex. A at 23–24. However, Plaintiff says she did try at some point to call the gym to cancel the account, but

---

[4] It bears noting that Plaintiff was not a minor when she signed the gym membership; she was 18 years old. Dkt. 86, Ex. A at 12.

she was unable to reach anyone there. Dkt. 77 at 2; Dkt. 86, Ex. A at 23. Defendant Triumph Fit denies this. Dkt. 86 at 4 ("Plaintiff did not attempt to go into or call the gym to cancel.").

Defendant Internal Credit is a debt collector that contracts with gyms to collect delinquent membership accounts. Dkt. 74 at 2. It entered into such an agreement with Triumph Fit. Dkt. 77, Ex. V. On May 2, 2019, Internal Credit sent Plaintiff a letter stating that it was a debt collector pursuing full payment of the delinquent $228.36 from her gym membership. Dkt. 77, Ex. K. The letter further stated: "After reviewing the account we advised our client [Triumph Fit] we are pursuing full payment for them." *Id.*

On May 8, 2019, an Anytime Fitness representative, Ms. Allison Hiles, called Plaintiff and left the following voicemail:

> Hey, Chloe. This is Allison Hiles. I'm the owner of Anytime Fitness in Oakhurst. And I understand that your account has gone to collections. And unfortunately, we have tried to reach out to you. And you are under a 12-month contract, and so therefore, we need you to come in to the gym – or we needed you to come in to the gym. We do a 70-percent buyout, and since that did not happen and you are over 90 days past due on your account, unfortunately it was sent to collections. And since it is in collections, at this point, there is nothing I can do on my end. And I know that it's not nice to deal with them, but unfortunately, you're going to have to settle your account with the collection agency. So if you have any other questions or need to reach out to me, feel free to give me a call.

Dkt. 86, Ex. C at 60–61.

On the same day, the owner of Internal Credit—Theodore Lachman—called Plaintiff around lunchtime. Dkt. 86, Ex. A at 44. The parties' stories again diverge at this point. Plaintiff alleges Lachman screamed at her and called her a "bitch" and a "brat" after she stated she wanted her mother to get on the phone. Dkt. 86, Ex. A at 40. Mr. Lachman denies this. Dkt. 86, Ex. D at 91. Plaintiff also alleges Mr. Lachman falsely represented himself as an attorney during the call. Dkt. 86, Ex. A at 51. Mr. Lachman denies this as well. Dkt. 86, Ex. D at 91.

Plaintiff's mother then got on the phone with Mr. Lachman.[5] Plaintiff alleges Mr. Lachman called her mother a "bitch" and a "cunt." Dkt. 86, Ex. A at 49. Mr. Lachman denies this. Dkt. 86, Ex. D at 91. He says Plaintiff's mother is the one who became irate and started using vulgar language, telling him to "go fuck yourself." *Id.* at 69–70. This was the only conversation Internal Credit had with Plaintiff and Plaintiff's mother.

Internal Credit called Plaintiff a second time one week later but received her voicemail. Mr. Lachman left the following voicemail:

> Yeah. This message is for Chloe. This is Ted Lachman giving you
> a call regarding a legal matter. I spoke to you over a week ago. They

---

[5] There is a dispute whether Mr. Lachman spoke with Plaintiff's mother during the initial call, or whether Plaintiff hung up on Mr. Lachman and her mother called him back separately. *Compare* Dkt. 86, Ex. A at 45 ("[Chloe Rafer]: So I hung up, and I called my mother, and I was, like, 'This just happened. I cannot believe that.' And she was like, 'What's the number? Give me the number.' So she called him . . . Q. Okay. So you were not with your mom when you took the first call? [Chloe Rafer]: No. I had her call the number after.") *with* Dkt. 86, Ex. D at 69 (Q: Okay. So this is a phone call that Internal Credit Systems made to Ms. Rafer and also spoke to her mother. [Ted Lachman]: Yes. Q: In the same phone call. [Ted Lachman]: Yes.").

asked me to give you one last call before they move forward. My number's 1-877-405-1900.

Dkt. 86, Ex. A at 47; Dkt. 86, Ex. D at 78. Internal Credit did not reach out to Plaintiff again after leaving this message.

Plaintiff filed the operative Amended Complaint in September 2020. Dkt. 44. She alleges that she began incurring monthly charges for her membership that should not have been due because she properly cancelled her account. *Id.* at 6. These charges, Plaintiff alleges, constitute an illegitimate debt that Internal Credit then attempted to collect. *Id.* at 9. She claims Internal Credit violated several debt collection statutes during this process.

The majority of Plaintiff's claims are against Internal Credit, who Plaintiff refers to as "Debt Collector 2." In Count One, Plaintiff brings the following claims against Internal Credit for alleged violations of the FDCPA:

a. Debt Collector 2 violated 15 U.S.C. § 1692d(1) by threatening to sue Ms. Rafer if she did not satisfy the alleged Debt when Debt Collector 2 had no intent to file such suit.

b. Debt Collector 2 violated 15 U.S.C. § 1692d (2) by using obscene or profane language in the course of collecting the alleged Debt during it phone call with Ms. Rafer and her mother.

c. Debt Collector 2 violated 15 U.S.C. § 1692e (2)(A) by misrepresenting the legal status of the alleged Debt as collectible and owing when Ms. Rafer had properly cancelled the Account.

d. Debt Collector 2 violated 15 U.S.C. § 1692e (3) by the falsely representing itself as an attorney during its call with Ms. Rafer and her mother, and in its voicemail in May of 2019 regarding a "legal

matter" when in fact Debt Collector 2 was not an attorney.

Dkt. 44 at 9. And in Count Two, Plaintiff brings the following claims against

Internal Credit for alleged violations of the FCCPA:

a. Debt Collector 2 violated Fla. Stat. § 559.72(7) by willfully engaging in conduct that can reasonably be expected to harass Ms. Rafer and her mother during its phone call with Ms. Rafer and her mother, and by the use of threats in its May 2019 voicemail regarding "legal action."

b. Debt Collector 2 violated Fla. Stat. § 559.72(8) by using obscene or profane language in the course of collecting the alleged Debt during its phone call with Ms. Rafer and her mother.

c. Debt Collector 2 violated Fla. Stat. § 559.72(9) by misrepresenting the Debt as collectible and owing when Debt Collector 2 knew that Ms. Rafer had properly cancelled the Account.

d. Debt Collector 2 violated Fla. Stat. § 559.72(9) by misrepresenting the intent to pursue legal action in its May 2019 voicemail and its Collection Letter 1 when no such intent existed.

e. Debt Collector 2 violated Fla. Stat. § 559.72(10) by falsely representing itself as an attorney in its call with Ms. Rafer and her mother, when in fact Debt Collector 2 was not an attorney.

f. Debt Collector 2 violated Fla. Stat. § 559.72(12) by falsely representing itself as an attorney in its call with Ms. Rafer and her mother, when in fact Debt Collector 2 was not an attorney.

Dkt. 44 at 12. Plaintiff pleads several injuries under each count, including

embarrassment, emotional distress, loss of sleep, aggravation, harm to her

reputation, stress, anxiety, and an invasion of privacy. Dkt. 44 at 10, 12–13, 20.

Plaintiff voluntarily dismissed her claims against ABC Financial Services—Triumph Fit's billing company—in December 2020. Dkts. 65, 66. She also voluntarily dismissed her only direct claim against Triumph Fit in March 2021. Dkt. 81. The only remaining claims against Triumph Fit allege it is vicariously liable for Internal Credit's violations. Plaintiff Rafer, Defendant Internal Credit, and Defendant Triumph Fit now all move for summary judgment.

## I.     Summary Judgment Standard

Summary judgment should be entered only if there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; it must be a *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* at 248.

If factual issues are present and they are material, the Court must deny the motion and proceed to trial. *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248;

*Hoffman v. Allied Corp.*, 912 F.2d 1379, 1383 (11th Cir. 1990).

## II.    The FDCPA

The FDCPA imposes civil liability on debt collectors for certain prohibited

debt-collection practices. *See* 15 U.S.C. § 1692 *et seq.*; *see also Harris v. Liberty*

*Cmty. Mgmt., Inc.*, 702 F.3d 1298, 1299 (11th Cir. 2012). To state a plausible

claim under the FDCPA, a plaintiff must allege (1) the defendant is a debt

collector, (2) the defendant's challenged conduct is related to debt collection, and

(3) the defendant's actions violate the FDCPA. *See* § 1692; *see also Reese v. Ellis,*

*Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1216 (11th Cir. 2012).

Here, both parties agree Internal Credit is a debt collector and the conduct at

issue is related to debt collection. Thus, the only remaining issue for the FDCPA

claims is whether Internal Credit's actions violated the FDCPA.

## III.    The FCCPA

The FCCPA provides that no person shall engage in certain practices while

attempting to collect a consumer debt. *See generally* Fla. Stat. § 559.72. To recover

under the FCCPA, a plaintiff must show: (1) the subject debt is a "consumer debt,"

and (2) the defendant engaged in an act or omission prohibited by the FCCPA.

*Owens-Benniefield v. Nationstar Mortg. LLC*, 258 F. Supp. 3d 1300, 1315 (M.D.

Fla. 2017) (internal citations omitted). A plaintiff can recover under both the

FCCPA and the FDCPA in a single action for the same conduct. *See LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190–92 (11th Cir. 2010). The parties here do not dispute that the debt at issue is considered a "consumer debt." Therefore, the only remaining question for these claims is whether the defendants' actions violated the FCCPA.

## DISCUSSION

### I.    Claims Against Defendant Internal Credit

Plaintiff Rafer brings several claims against Defendant Internal Credit under both the FDCPA and the FCCPA. Dkt. 44. Because many of the FDCPA claims have parallels to the FCCPA claims[9] and are based on the same underlying conduct, the Court will group similar allegations under four general umbrellas: (1) misrepresenting the legal status of the debt as collectible; (2) false representation as an attorney; (3) threat of legal action when no intent to file suit; and (4) harassment or abuse.

### A. Misrepresenting the Legal Status of the Debt as Collectible

Plaintiff Rafer alleges Internal Credit violated § 1692e(2)(A) and Fla. Stat. § 559.72(9) by misrepresenting the alleged debt as collectible when it "knew that Ms. Rafer had properly cancelled the Account." Dkt. 44 at 9, 12. Section 1692e(2)(A) of the FDCPA prohibits "false representation of . . . the character,

---

[9] *See LeBlanc*, 601 F.3d at 1191–92 (noting parallels between the FCCPA and the FDCPA).

amount, or legal status of any debt." *See also Hepsen v. Resurgent Cap. Servs., LP*, 383 F. App'x 877, 881 (11th Cir. 2010). Similarly, § 559.72(9) prohibits someone from claiming, attempting, or threatening to enforce a debt when such person knows that the debt is not legitimate, as well as asserting the existence of some other legal right when such person knows that the right does not exist. There are three elements required to state this claim: (1) an illegitimate debt; (2) a threat or attempt to enforce that debt; and (3) actual knowledge that the debt is illegitimate. *See Williams v. Internal Credit Sys., Inc.*, No: 8:19-cv-1872-T-30AEP, 2021 WL 765574, at *4 (M.D. Fla. Feb. 27, 2021). Constructive knowledge is not sufficient for the third prong. *Williams v. Streeps Music Co., Inc*., 333 So. 2d 65, 67 (Fla. 4th DCA 1976) (striking allegation that debt collector "should have known" the claim was not legitimate).

The Court holds that these claims fail as a matter of law because the debt is legitimate. The clear terms of the membership contract did not allow Plaintiff to cancel her account prior to the end of the initial twelve-month term.[10] Plaintiff was required to make payments for twelve months, and only after this period did the contract allow Plaintiff to cancel any *renewal* of the membership. Plaintiff was therefore contractually obligated to pay the outstanding balance.

---

[10] None of the exceptions to this cancellation rule apply here. *See* Dkt. 77, Ex. C at 3 (allowing cancellation if the member died, if the member became physically disabled, if the gym shut down, or if the gym moved its facilities).

Moreover, even assuming Plaintiff had the contractual power to cancel her membership during the first year, Plaintiff would still be obligated to pay the outstanding balance because she did not follow the contract's required procedure for cancellation. The contract states that any cancellation must be sent to the gym's address or the address of the gym's billing company. Dkt. 77, Ex. C at 3, 4, 5. Yet Plaintiff attempted to cancel her membership by sending a message through the "Contact Us" page on the national website for Anytime Fitness. Plaintiff does not even remember whether she provided her last name in the message. Setting aside whether it was reasonable for Plaintiff to assume this was sufficient to cancel her membership, this action clearly does not conform with the cancellation requirements set forth in the contract.

Perhaps in an attempt to undermine the legitimacy of the debt, Plaintiff Rafer says she assumed she had the power to cancel the membership at any point during the first year because that was how her prior gym membership at Planet Fitness worked. Dkt. 86, Ex. A at 12–13. A cursory review of the membership contract undermines this argument. And although it is clear Plaintiff did not read the contract with Triumph Fit before she signed it,[11] that is not a viable legal

---

[11] *See* Dkt. 86, Ex. A at 13 ("Q. Okay. But you – was it your understanding that you had to pay 12 full months under the contract for – for Anytime Fitness, not Planet Fitness? [Chloe Rafer]: It wasn't specified outright like 'You're – you're going to have to pay all 12 full months no matter what.' That wasn't really clarified to me unless I went down and read the print where – she had an iPad, and she had me, like, filling the boxes really quick, so it was kind of rather – if I knew what I was signing up for, I definitely wouldn't have signed up for it."); *see also id.* at 18

defense. *See Santana v. Miller*, 314 So. 3d 346, 349 (Fla. 3d DCA 2020) ("It is well-established the failure to review and read a contract prior to its execution is not a defense against its application."). Nor is the fact that Plaintiff signed the contract on an iPad. *See* Fla. Stat. § 668.004 ("Unless otherwise provided by law, an electronic signature may be used to sign a writing and shall have the same force and effect as a written signature.").

In short, the debt is legitimate, and the Court grants summary judgment in favor of Internal Credit on the § 1692e(2)(A) and § 559.72(9) claims.

## B. False Representation as an Attorney

Section 1692e(3) of the FDCPA prohibits a debt collector from falsely representing or implying that an individual is an attorney or that a communication is from an attorney. Similarly, under Fla. Stat. § 559.72(10), a person who is collecting a consumer debt cannot use a communication that gives the false appearance of being authorized or issued by an attorney. And under Fla. Stat. § 559.72(12), a person who is collecting a consumer debt cannot orally communicate with the debtor in a manner that gives the false appearance that such a person is or is associated with an attorney.

---

("[Chloe Rafer]: And, yeah, definitely if it was, like, on paper, more legible on the screen, I probably would have sat and read it, but it was definitely a really rushed situation.").

Plaintiff brings claims under each of these provisions based on two interactions with the owner of Internal Credit, Ted Lachman. Plaintiff alleges one violation occurred when Mr. Lachman left her a voicemail stating:

> Yeah. This message is for Chloe. This is Ted Lachman giving you a call regarding a **legal matter**. I spoke to you over a week ago. **They asked me to give you one last call before they move forward**. My number is 1-877-405-1900.

Dkt. 86, Ex. A at 47; Dkt. 86, Ex. D at 78 (emphasis added).

The Court holds that this voicemail does not violate any of the provisions at issue here. The phrase "legal matter" is an accurate statement; the collection of a debt is indeed a legal matter. Because any person—including non-attorneys—may have legal matters concerning others, this phrase alone cannot form the basis of Plaintiff's claims. Nor does the "moving forward" language form a sufficient basis for these claims. This language is vague and does not necessarily imply the association of an attorney. Internal Credit never stated or implied in this voicemail that it had conferred with an attorney or that any attorney was involved in the matter at this point.

However, there is a genuine dispute of material fact as to whether Mr. Lachman falsely referred to himself as an attorney during his phone call with Plaintiff in May 2019. *Compare* Dkt. 86, Ex. A at 51 ("Q: What did – what did Mr. Lachman of ICS say that gave you the impression that they were going to pursue legal action? [Chloe Rafer]: Well, he said he was an attorney when he picked up

the phone representing Anytime – well, Triumph Fit, as I believe he used, but – yeah. No, he actually said he was an attorney.") *with* Dkt. 86, Ex. D at 91 ("[Ted Lachman]: And I wanted to verify with her that I never told anybody that I was an attorney."). Because this is a genuine dispute of material fact, the Court cannot grant summary judgment to either party as to the phone call.

### C. Threat of Legal Action When No Intent to File Suit

#### 1. The FDCPA Claim

Plaintiff alleges Internal Credit violated 15 U.S.C. § 1692d(1) by threatening to sue Ms. Rafer when it had no intent to file such suit. Dkt. 44 at 9. Section 1692d(1) provides:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.
>
> Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (1) The use or threat of use of violence or other criminal means to harm the physical person, reputation or property of any person.

The Court holds that this claim fails as a matter of law. Even assuming the veracity of Plaintiff's claim—that Internal Credit threatened to sue her but never actually intended to file suit—this conduct does not involve violence or criminal activity as required by § 1692d(1). In fact, nothing in the record suggests Internal Credit ever threatened violence or other criminal means against Plaintiff.

16

The Court is puzzled why Plaintiff chose to bring her cause of action under § 1692d(1) as opposed to § 1692e(5), which prohibits a debt collector from making a "threat to take any action that cannot legally be taken or that is not intended to be taken." Although Plaintiff relies on many cases involving § 1692e(5), *see, e.g.*, Dkt. 75 at 10, the Eleventh Circuit has made clear that § 1692d claims are evaluated under different standards than § 1692e(5) claims. *See Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1179 (11th Cir. 2015) (holding there was a genuine issue of fact for a § 1692e(5) claim but no genuine issue of fact for a § 1692d claim based on the same conduct).

To the extent Plaintiff may have intended to state this theory of liability under § 1692d more generally, as opposed to § 1692d(1) in particular, this would still be insufficient. Plaintiff bases her claim on allegations that Internal Credit threatened to sue her. But the mere threat of taking legal action cannot itself constitute harassment, oppression, or abuse under § 1692d. *See Jeter*, 760 F.2d at 1179 (recognizing that the adverse consequences of a debt collection lawsuit "are so commonplace" that a threat of litigation cannot itself constitute harassment, oppression, or abuse under § 1692d). And even assuming Internal Credit did not actually intend to file suit, the Eleventh Circuit has made clear that deceptive conduct does not violate § 1692d per se. *See id.* at 1179 ("Deception or falsehood alone, however, is wholly different from the conduct condemned in subsections (1)

through (6) of § 1692d."). Instead, § 1692d is designed to protect against "coercion and delving into the personal lives of debtors." *Jeter*, 760 F.2d at 1180 n.12 (citations omitted). Plaintiff has failed to show how any alleged toothless threat of litigation coerced her or invaded her personal life.

Finally, these claims fail for an additional but important reason: the record does not show that Internal Credit ever threatened litigation outright. Plaintiff admitted that Mr. Lachman never said he was going to file a lawsuit against her during the May 2019 phone call. *See* Dkt. 86, Ex. A at 53 ("Q: On that phone call, did he ever tell you that they were going to file a lawsuit, that they were going to sue you, anything like that? [Chloe Rafer]: Not direct words, but he made it, like, definitely sound like I was going to get sued."). In fact, the only reason why Plaintiff suspected Internal Credit intended to file suit against her was because Mr. Lachman allegedly labeled himself as an attorney. Dkt. 86, Ex. A at 52 ("Q: So other than Mr. Lachman saying he was an attorney, anything else that was stated or anything else that gave you the impression that they were going to pursue legal action? [Chloe Rafer]: No."). This alleged falsity—assuming it even occurred— does not equate a threat of suit.

The language in the voicemail does not amount to a threat of litigation either. The term "legal matter" does not necessarily imply the existence of litigation; the practice of debt collection is indeed a legal matter even before parties

take their issues to court. And the "moving forward" language is too vague to constitute a threat of suit. In fact, the message explicitly states that Mr. Lachman is giving Plaintiff one last call *before* any further steps are taken. For all of the above reasons, Plaintiff has failed to state this claim, and summary judgment is awarded in favor of Defendant Internal Credit.

### 2. The FCCPA Claim

Plaintiff also alleges Internal Credit "violated Fla. Stat. § 559.72(9) by misrepresenting the intent to pursue legal action in its May 2019 voicemail and its Collection Letter 1 when no such intent existed." Dkt. 44 at 12. Section 559.72(9) provides that no person shall "[c]laim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." In other terms, § 559.72(9) prohibits someone from attempting to enforce a debt he or she is not entitled to collect. *Castellanos v. Portfolio Recovery Assocs., LLC*, 297 F. Supp. 3d 1301, 1313 (S.D. Fla. 2017). This requires the plaintiff to demonstrate the defendant possessed actual knowledge that the threatened means of enforcing the debt was unavailable. *See LeBlanc*, 601 F.3d at 1192 n.12.

Here, the Court need not address whether Internal Credit actually intended to pursue legal action against Plaintiff because the debt at issue was legitimate. As previously explained, Plaintiff was liable to pay the remaining balance because the

contract did not allow her to cancel her membership during the initial twelve-month period, and even if it did, Plaintiff still did not follow the proper cancellation procedures. Thus, because Plaintiff cannot show Internal Credit attempted to collect an illegitimate debt—let alone that it had actual knowledge of any illegitimacy—Plaintiff's § 559.72(9) claim fails and Internal Credit is entitled to summary judgment.

### D. Harassment or Abuse

As previously stated, § 1692d of the FDCPA prohibits a debt collector from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." Banned conduct includes the "use of obscene or profane language," which encompasses "name-calling, racial or ethnic slurs, and other derogatory remarks that are similar in their offensiveness to obscene or profane remarks." *See* § 1692d(2); *see also Jeter*, 760 F.2d at 1178. Section 1692d claims are viewed "from the perspective of a consumer whose circumstances make [her] relatively more susceptible to harassment, oppression, or abuse." *Id.* at 1179.

The FCCPA similarly prohibits abuse or harassment in debt collection efforts. Section 559.72(7) prohibits a person from willfully engaging in conduct that "can reasonably be expected to abuse or harass the debtor or any member of her or his family." And § 559.72(8) prohibits a person from using "profane,

obscene, vulgar, or willfully abusive language" when communicating with a debtor or any member of the debtor's family.

Here, Plaintiff Rafer alleges Internal Credit violated § 559.72(7) through "the use of threats in its May 2019 voicemail regarding 'legal action.'" Dkt. 44 at 11. However, as the Court already explained, the term "legal action" on its own does not constitute a threat of suit, and Plaintiff has not shown how the use of this term amounts to abuse or harassment. This claim fails accordingly.

However, there is a genuine dispute of material fact as to whether the language Mr. Lachman allegedly used during the May 2019 phone call amounts to a violation of § 1692d(2), § 559.72(7), and/or § 559.72(8). Plaintiff Rafer alleges Lachman called Plaintiff a "bitch" and a "brat" and called Plaintiff's mother a "bitch" and a "cunt" on the phone in May 2019. Dkt. 86, Ex. A at 49. This presents three issues for a jury. First, the parties disagree whether Mr. Lachman even said these slurs. *Compare* Dkt. 86, Ex. A at 49 (Q: Can you tell me what the obscene or profane language was? [Chloe Rafer]: I mean, definitely he called me a bitch, a brat. He called my mom bitch and a cunt.") *with* Dkt. 86, Ex. D at 91 ("[Mr. Lachman]: I didn't curse at anybody."). Second, it is typically a question for the jury whether a defendant's conduct rises to the level of harassment or abuse. *See Jeter,* 760 F.2d at 1179. And third, for the § 559.72(7) claim, it is up to the jury to determine whether the Defendant "willfully" engaged in the alleged abuse and

harassment. The Court therefore cannot grant summary judgment to either party on these claims.

## II. Claims Against Triumph Fit

Plaintiff Rafer voluntarily dismissed her only direct claim against Triumph Fit, *see* Dkt. 81, but she still alleges Triumph Fit is vicariously liable for Internal Credit's alleged FCCPA violations, *see* Dkt. 76 at 1. Therefore, the only claims that remain against Triumph Fit are the FCCPA claims that remain against Internal Credit pursuant to the above analysis: the § 559.72(10) and § 559.72(12) claims based on allegations that Mr. Lachman falsely referred to himself as an attorney during the May 2019 phone call; and the § 559.72(7) and § 559.72(8) claims based on allegations that Mr. Lachman called Plaintiff a "bitch" and a "brat" and called Plaintiff's mother a "bitch" and a "cunt" during the same call.

Plaintiff argues Triumph Fit can be held vicariously liable for these alleged transgressions because Internal Credit was acting as Triumph Fit's agent under both actual authority and apparent authority. Dkt. 76 at 4–10. Triumph Fit argues no agency relationship existed under either theory. Dkt. 85 at 5–23.

The determination of whether an agency relationship exists is generally a question of fact for the jury.[12] *See Villazon v. Prudential Health Care Plan, Inc.*,

---

[12] This analysis requires application of Florida law. *See Agrelo v. Affinity Mgmt. Servs., LLC*, 841 F.3d 944, 953 (11th Cir. 2016) (requiring lower court to apply Florida agency law to decide whether defendant was vicariously liable for FCCPA violations of its alleged agents).

843 So. 2d 842, 853 (Fla. 2003). Courts may not grant summary judgment on questions of agency when the totality of evidence is susceptible to multiple inferences and interpretations. *See Mendez v. Hampton Ct. Nursing Ctr., LLC*, 203 So. 3d 146, 150 (Fla. 2016). However, courts can grant summary judgment on the question of agency when the evidence presented is so unequivocal that it compels only one interpretation. *See Marchisio v. Carrington Mortg. Servs., LLC*, 919 F.3d 1288, 1311 (11th Cir. 2019) (applying Florida agency law).

Here, on the question of actual agency, the record contains conflicting evidence. Plaintiff Rafer must establish the following to show there was an actual agency relationship: (1) acknowledgment by Triumph Fit—as the alleged principal—that Internal Credit will act on its behalf; (2) Internal Credit's acceptance of the undertaking; and (3) control by Triumph Fit over the actions of Internal Credit. *See Goldschmidt v. Holman*, 571 So. 2d 422, 424 n.5 (Fla. 1990) (listing elements of actual agency). "The key element in establishing actual agency is the control by the principal over the actions of the agent." *Hickman v. Barclay's Int'l Realty, Inc.*, 5 So. 3d 804, 806 (Fla. 4th DCA 2009). "And it is the right of control, not actual control or descriptive labels employed by the parties, that determines an agency relationship." *Id.*

The largest dispute is whether Triumph Fit exerted the requisite level of control over Internal Credit's actions. On the one hand, the Service Agreement

between the two parties gives Internal Credit the power to "take whatever proper steps necessary to motivate the collection of [Triumph's] accounts within the parameters of federal, state, and city laws and regulations." Dkt. 77, Ex. V at 1. Triumph Fit also did not control the content, timing, or frequency of Internal Credit's communications with debtors. Dkt. 77, Ex. D. And once an account is with Internal Credit for collection, Triumph can only stop the process for "just cause." Dkt. 77, Ex. V at 1. These facts, among others in the record, could subvert the existence of an actual agency relationship.

On the other hand, Triumph controlled when the collection process began and whether it should be stopped at any point. Dkt. 73, Ex. E at 1 ("Triumph selects the cases that are to be sent to third-party collections and verifies the information. After that, Triumph determines if ICS should continue collection efforts, pursue legal action, or cease collection efforts, but is otherwise not involved in the collection efforts").[13] Triumph Fit also determined if and when litigation should be started. *Id.* Moreover, the Service Agreement between Triumph Fit and Internal Credit identities Internal Credit as Triumph Fit's "agent" several times. Dkt. 77, Ex. V. Although it is not dispositive whether the parties labeled the

---

[13] *See also* Dkt. 73, Ex. C at 73 ("[Ted Lachman]: I said, 'Allison, do you want to take this member out of collections? Her mother's going to be a problem. Sometimes it's better to just take somebody out and be done with it.' And Allison confirmed to me that she wants her money, she owes her money, and then leave her in collections.").

relationship as an agency or not, *see Villazon*, 843 So. 2d at 853–54 (holding that the use of descriptive labels in a contract is not determinative of whether an agency relationship exists), these facts—and others in the record—could support the existence of an actual agency relationship. Thus, the evidence is not so unequivocal that the Court can rule as a matter of law that no actual agency relationship existed. *See Marchisio*, 919 F.3d at 1311.

As for apparent authority, the record also contains conflicting evidence. Apparent authority exists when the principal creates the appearance of an agency relationship. *See Villazon*, 843 So. 2d at 855 (citing *Spence, Payne, Masington & Grossman, P.A. v. Philip M. Gerson, P.A.*, 483 So. 2d 775, 777 (Fla. 3d DCA 1986)). This authority does not arise from the subjective understanding of the person dealing with the purported agent or from appearances created by the purported agent himself. *See Stone v. Palms West Hosp.*, 941 So. 2d 514, 519 (Fla. 4th DCA 2006). In order to state a claim under apparent authority, a plaintiff must allege that: (1) the alleged principal made a representation causing a third party to believe that the alleged agent had authority to act for the benefit of the principal; (2) the third party relied on this representation; and (3) the third party changed its position in reliance on the representation. *See Mobil Oil Corp. v. Bransford*, 648 So. 2d 119, 121 (Fla. 1995).

Here, Plaintiff Rafer bases her apparent agency argument on the voicemail

Ms. Hiles left on May 8, 2019, which partially stated:

> Hey, Chloe. This is Allison Hiles. I'm the owner of Anytime Fitness
> in Oakhurst. And I understand that your account has gone to collections
> . . . We do a 70-percent buyout, and since that did not happen and you
> are over 90 days past due on your account, unfortunately it was sent to
> collections. And since it is in collections, at this point, there is nothing
> I can do on my end. And I know that it's not nice to deal with them, but
> unfortunately, you're going to have to settle your account with the
> collection agency.

Dkt. 86, Ex. C at 60–61. A jury will have to determine whether the language in this

voicemail reasonably led Plaintiff to believe Internal Credit had authority to act on

behalf of Triumph Fit. A jury will also have to determine whether Plaintiff actually

relied on this representation and whether this reliance caused her to change her

position detrimentally. These facts-specific determinations are ineligible for

summary judgment.

Finally, assuming an agency relationship exists, there is also a question of

whether Internal Credit acted within the course and scope of the agency when

allegedly violating the FCCPA. A principal may be vicariously liable for an

agent's acts if the agent performed those acts within the course and scope of the

agency relationship. *See Roessler v. Novak*, 858 So. 2d 1158, 1161 (Fla. 2d DCA

2003). The scope of an agency relationship is generally a question of fact to be

resolved by the factfinder. *See Mendez*, 203 So. 3d at 150; *see also Jaar v. Univ. of

Miami*, 474 So. 2d 239, 242 (Fla. 3d DCA 1985). Here, the Service Agreement

says Internal Credit can "take whatever proper steps necessary to motivate the collection of [Triumph's] accounts *within the parameters of federal, state, and city laws and regulations*." Dkt. 77, Ex. V at 1 (emphasis added). A reasonable jury may find that this provision limited the scope of Internal Credit's alleged agency so that the alleged FCCPA violations fall outside any agency relationship.

The Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motions for Summary Judgment, Dkts. 74, 75, 76, and 85.

As for Count One:

a. Defendant Internal Credit is entitled to summary judgment on Claim A for alleged violations of § 1692d(1). Plaintiff's motion for summary judgment on this claim is denied.
b. No party is entitled to summary judgment on Claim B for alleged violations of § 1692d(2).
c. Defendant Internal Credit is entitled to summary judgment on Claim C for alleged violations of § 1692e(2)(A). Plaintiff's motion for summary judgment on this claim is denied.
d. Defendant Internal Credit is entitled to summary judgment on Claim D for alleged violations of § 1692e(3) pertaining to the "legal matter" language in the voicemail. However, no party is entitled to summary judgment on Claim D for alleged violations of § 1692e(3) pertaining to the phone call.

As for Count Two:

a. Defendant Internal Credit is entitled to summary judgment on Claim A for alleged violations of § 559.72(7) pertaining to the "legal matter" language in the voicemail. However, no party is entitled to summary judgment on Claim A for alleged violations of § 559.72(7) pertaining to the phone call.
b. No party is entitled to summary judgment on Claim B for alleged violations of § 559.72(8).

c. Defendant Internal Credit is entitled to summary judgment on Claim C for alleged violations of § 559.72(9). Plaintiff's motion for summary judgment on this claim is denied.
d. Defendant Internal Credit is entitled to summary judgment on Claim D for alleged violations of § 559.72(9). Plaintiff's motion for summary judgment on this claim is denied.
e. No party is entitled to summary judgment on Claim E for alleged violations of § 559.72(10).
f. No party is entitled to summary judgment on Claim F for alleged violations of § 559.72(12).

As for Count Four:

a. Defendant Triumph Fit is entitled to summary judgment on Claim A for alleged violations of § 559.72(7) pertaining to the "legal matter" language in the voicemail. However, no party is entitled to summary judgment on Claim A for alleged violations of § 559.72(7) pertaining to the phone call.
b. No party is entitled to summary judgment on Claim B for alleged violations of § 559.72(8).
c. Defendant Triumph Fit is entitled to summary judgment on Claim C for alleged violations of § 559.72(9). Plaintiff's motion for summary judgment on this claim is denied.
d. Defendant Triumph Fit is entitled to summary judgment on Claim D for alleged violations of § 559.72(9). Plaintiff's motion for summary judgment on this claim is denied.
e. No party is entitled to summary judgment on Claim E for alleged violations of § 559.72(10).
f. No party is entitled to summary judgment on Claim F for alleged violations of § 559.72(12).

**DONE AND ORDERED** at Tampa, Florida, on June 22, 2021.


*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**


**COPIES FURNISHED TO:**

Counsel of Record